## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JESSICA LINQUATA**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**SCHOOL COMMITTEE OF GLOUCESTER;**<br>**RICHARD N. SAFIER**, in his personal and official capacity as Superintendent of Gloucester Public Schools;<br>**DEBRA LUCEY**, in her personal capacity;<br>**LYNNE BEATTIE,** in her official capacity as Principal of O'Maley Innovation Middle School; and<br>**JEFF STRONG**, in his personal and official capacity as Assistant Principal of O'Maley Innovation Middle School,<br><br>Defendants. | CIVIL ACTION NO. 1:18-cv-11854<br><br>**42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jessica Linquata brings this Complaint for declaratory relief, injunctive relief, and damages against.  This is an action under 42 U.S.C. § 1983 to address Defendants School Committee of Gloucester ("SCG"), Richard N. Safier, Debra Lucey, and Jeff Strong's violations of Plaintiff's First Amendment right to freedom of expression, as well as her due process rights in terminating her employment based on an unconstitutionally vague social media policy.[1]  Based on Defendants' clear constitutional violations and willful and deliberate violations of the law, Plaintiff seeks a permanent injunction, declaratory relief, damages,

---

[1]   At all times relevant herein, Debra Lucey was Principal of O'Maley Innovation Middle School.  She has since left that position and has been replaced by Lynne Beattie, who is named as a defendant solely in her official capacity.

costs, and attorneys' fees, and any other relief to which she is entitled as a victim of civil rights violations.

## 1.0    INTRODUCTION

1.      This is a case about a public school terminating one of its employees because it disapproved of the content of her speech, and using an unconstitutionally vague policy regulating speech that affords Defendants unlimited discretion to punish employees when the government feels like it.

2.      Ms. Linquata was an employee of O'Maley Innovation Middle School ("O'Maley"), a public school in the Gloucester Public School District located in Gloucester, Massachusetts, operated by the School Committee of Gloucester.

3.      On multiple occasions during the year leading up to her termination, Ms. Linquata spoke out regarding school conditions and policies.  Rather than trying to solve the problems Ms. Linquata identified, O'Maley and its administration responded with threats and hostility.

4.      After Ms. Linquata expressed classroom safety concerns on her private Facebook account following the tragic school shooting at Marjory Stoneman Douglas High School in Parkland, Florida, Defendants terminated Ms. Linquata's employment at O'Maley, informing her that her contract of employment would not be renewed for the following school year.

5.      The basis for Ms. Linquata's termination was an alleged history of violating O'Maley's social networking policy, a policy so vague and imprecise that it could cover any possible statement on any subject.

6.      When Ms. Linquata's students learned of her termination, they immediately engaged in political activism and circulated petitions to have her reinstated.  Ms. Linquata had no part in this activity.  Rather than encourage this civic-minded behavior, however, Defendants forced Ms. Linquata to tell the

students to be quiet, even going so far as to threaten the academic reputation of her niece, a student at O'Maley.

7.      Defendants violated Ms. Linquata's First Amendment rights by terminating her employment in retaliation for speech she made as a private citizen on a matter of public concern.

8.      Defendants violated Ms. Linquata's Fourteenth Amendment rights by enforcing a social media policy that fails to inform anyone of what statements or conduct are prohibited.

9.      The Court should permanently enjoin Defendants from infringing the constitutional rights of Ms. Linquata and similarly situated employees, require Defendants to reinstate Ms. Linquata at her prior position with back-pay, order Defendants to pay damages for the violations that have already occurred, and order Defendants to pay attorneys' fees and costs to compensate Ms. Linquata for the expense of vindicating her Constitutional rights.

## 2.0      JURISDICTION AND VENUE

10.      This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 & 1343.  This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

11.      Personal jurisdiction over the defendants in this Court is appropriate pursuant to Mass. Gen. Laws. ch. 223A, sec. 2, as all defendants are domiciled in or organized under the laws of the Commonwealth of Massachusetts.

12.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391.  Defendants reside in Massachusetts, and all actions pertinent to this Complaint occurred in Essex County, Massachusetts.

### 3.0    THE PARTIES

13.     Plaintiff Jessica Linquata is a resident of Massachusetts.  At all relevant times, she was employed by Defendants as a performing arts teacher at O'Maley.

14.     Defendant School Committee of Gloucester is a school committee organized pursuant to G.L. c. 43, sec. 31 and Article 4, Section 4-1(a) of the Code of Ordinances, City of Gloucester, Massachusetts, that exercises control and management of the public schools of the City of Gloucester.

15.     Defendant Richard N. Safier is the Superintendent of the public schools of the City of Gloucester, and is domiciled in the Commonwealth of Massachusetts.  He is sued here in his personal and official capacity.

16.     Defendant Debra Lucey is the immediate past Principal of O'Maley, having left office on June 30, 2018, and is domiciled in the Commonwealth of Massachusetts.  At all times relevant herein, Lucey was the Principal of O'Maley. She is sued here in her personal capacity.

17.     Defendant Jeff Strong is an Assistant Principal at O'Maley, and at all relevant times served as Ms. Linquata's direct supervisor and evaluator. Defendant Strong is domiciled in the Commonwealth of Massachusetts. He is sued here in his personal and official capacity.

18.     Defendant Lynne Beattie is the current Principal of O'Maley, having assumed office on July 1, 2018.   Defendant Beattie is domiciled in the Commonwealth of Massachusetts.  She is sued here in her official capacity. The term "Defendants" as used in this Complaint does not include Ms. Beattie for any matter prior to July 1, 2018.

### 4.0    STANDING

19.     Ms. Linquata was directly affected by Defendants' unlawful activities because she was the target of Defendants' unlawful chilling of her protected

speech, and because her speech was chilled by Defendants' vague and unconstitutional social media policy.

20. Defendants' activities caused a violation of Ms. Linquata's rights under the United States Constitution, and these rights continue to be violated by Defendants' vague and unconstitutional policy. Thus, the requirements for Article III standing have been met.

### 5.0   FACTS COMMON TO ALL CLAIMS

#### 5.1   The Social Networking Policy

21. SCG issued a Social Networking Policy governing SCG employees' use of social media and social networking web sites (the "Policy"). (*See* Policy, attached as **Exhibit 1**.)

22. At all times relevant herein, the Policy was in effect.

23. Section III of the Policy provides that the Policy creates "expectations for staff members'/volunteers' use of social networks such as Facebook, Linked-in, Twitter, personal email accounts, text message features of cell phones, use of blogs, and other electronic or technologically based communication systems." (**Exhibit 1** at 2, § III) (emphasis removed).

24. Section III(8) of the Policy provides:

This policy is not intended to infringe upon a staff member's/volunteer's right to speak publicly on matters of public concern, or to communicate with fellow members of their union on workplace issues, so long as such communication adheres to appropriate time, place and manner restrictions and does not interfere with the performance of your job duties. **However, when you speak via social networking sites or tools on matters concerning your work, you are speaking as an employee and not as a citizen, restrictions may be placed upon your freedom to express yourself**. Those restrictions are intended to preserve student confidentiality, maintain your status as an educator who should command and receive the respect of students, be able to maintain order and discipline in your classroom, and remain objective with respect to your students.

(*Id.* at 4, § III(8)) (emphasis added).

25.     Section III(9) provides:

> Staff members/volunteers are discouraged from using home telephones, personal cell phones, personal email accounts and personal Facebook accounts to communicate with students. Your communications with students, even if you do not use school resources for such communications, are within the jurisdiction of the school district to monitor as they arise out of your position as an educator. **Any conduct, whether online or not, that reflects poorly upon the school district or consists of inappropriate behavior on the part of a staff member, may expose an employee to discipline up to and including discharge. Even if you are not using a school telephone, computer, classroom or the like to engage in contact with a student, such contact is not outside of the school district's authority to take appropriate disciplinary action. If your behavior is inappropriate, undermines your authority to instruct or maintain control and discipline with students, compromises your objectivity, or harms students, the school district reserves the right to impose discipline for such behavior**. A staff member/volunteer may also face individual liability for inappropriate online communications with students and/or parents and guardians, as well as exposing the district to vicarious liability in certain instances.

(*Id.* at 4, § III(9)) (emphasis added.)

### 5.2   Ms. Linquata's Relationship with Defendants

26.     Until recently, Ms. Linquata was a performing arts teacher at O'Maley, without professional teacher status under G.L. c. 71, § 41.

27.     Starting in 2016, Ms. Linquata observed that her classroom at O'Maley was filled with aggravating dust caused by wall paneling that had become loose.  In fact, a piece of the paneling fell off during class one day and struck a student.  She was informed by O'Maley custodial staff of the possibility that the wall paneling contained asbestos, and she made several requests over several months to Defendants to have the paneling tested and removed. Defendants did nothing, and Ms. Linquata, who was pregnant at the time, was forced to remove the most obstructive portions of the paneling by herself.

28.   On or about January 17, 2017, Ms. Linquata sent a private message to Gloucester Mayor Sefatia Romeo Theken using her personal Facebook account.  In this message, she noted her observations about the possible spread of asbestos in her classroom and that Defendants had done nothing about it.

29.   On information and belief, as a response to this message, Mayor Theken contacted Defendants and urged them to move Ms. Linquata's class to a different room while the potential asbestos sources were removed.

30.   Shortly after Ms. Linquata sent her Facebook message to Mayor Theken, her class was relocated to a different classroom and Defendants removed the potential asbestos sources from the classroom.

31.   On or around February 2017, Ms. Linquata published a post on her personal Facebook account.  In this message, Ms. Linquata stated that parents needed to consider holding their children accountable if their children received poor grades, rather than immediately blaming the teacher (the "Accountability Post").

32.   On April 26, 2017, Defendant Lucey sent an email to Ms. Linquata informing her that there would be an investigation regarding the Accountability Post, and that it could result in disciplinary action against Ms. Linquata.

33.   On April 27, 2017, Defendants Lucey and Strong conducted a meeting with Ms. Linquata regarding the Accountability Post.  During this meeting, Lucey informed Ms. Linquata that she would need to speak with Defendant Safier and SCG's lawyers to determine what should happen next.

34.   On April 28, 2017, Defendant Lucey sent an email to Ms. Linquata informing her that she would be sending Ms. Linquata a letter of reprimand regarding the Accountability Post.  Ms. Linquata received this letter on May 1, 2017.

35.    Ms. Linquata's employment was thereafter renewed for the 2017-2018 school year.

36.    Upon information and belief, Lucey submitted her retirement request to SCG in or about January 2018, desiring to spend more time with her family.

37.    With her retirement plans in place, Lucey became less attentive to her responsibilities and obligations as principal of O'Maley.

38.    On February 14, 2018, Ms. Linquata sent an email to O'Maley administrative staff, including Defendants Lucey and Strong, expressing concern over a recent change to an O'Maley school program that, at least originally, was meant to help "at risk" students become successful and reduce class interruptions caused by problem students (the "School Program Email").

39.    The same day, Defendant Lucey responded to Ms. Linquata with an email instructing her to see Lucey the following morning.  She replied "all" to Ms. Linquata's email, thus informing school administration, an O'Maley guidance counselor, and one of Ms. Linquata's colleagues of this meeting.

40.    On February 15, 2018, Defendant Lucey conducted a meeting with Ms. Linquata.  Lucey falsely claimed that Ms. Linquata was being "extremely disrespectful, insubordinate, overstepping [Ms. Linquata's] boundaries, and it was inappropriate to question [Lucey's] authority and decisions while including other staff members in this 'type' of email."  She vaguely stated that Ms. Linquata "knew what [she] was doing" when Ms. Linquata sent the School Program Email and that Lucey would not tolerate such "disrespectful" behavior.  She incorrectly told Ms. Linquata that it was not the job of teachers to question Lucey's actions.

41.    During this meeting, Defendant Lucey expressed anger that Ms. Linquata expressed her concerns to administrative staff other than Lucey.

42.    Despite opposing Ms. Linquata communicating with staff other than Lucey, she thereupon instructed Ms. Linquata also not to email Lucey with

questions, not to include other administrative staff in emails to Lucey, and not to send questions in writing to Lucey.

43.     Following her retirement announcement, Defendant Lucey was rarely, if ever, present on O'Maley grounds, and Ms. Linquata was not able to contact her in person, since written communications were not allowed.

44.     By these directives and Lucey's regular absence, Ms. Linquata could not communicate any questions or concerns about her employment, O'Maley, or SCG with any person in authority with SCG.

45.     All internal communications were *de facto* forbidden.

46.     Upon information and belief, on February 14, 2018, a student at Marjory Stoneman Douglas High School in Parkland, Florida opened fire on fellow students with an AR-15, killing 17 students and staff members and injuring 17 others.

47.     Neither Ms. Linquata nor any other O'Maley staff were provided with any form of instruction or even discussion regarding this shooting or how future school shootings might be prevented or mitigated at O'Maley.  Defendant Safier sent a letter to school staff regarding the shooting, but provided no guidance as to how future incidents could be prevented.  The school did not even perform lockdown drills.

48.     In fact, the only guidance Defendant Safier provided O'Maley teachers was that they were not allowed to participate in any student "walk out" demonstrations following the shooting, or even express support for students who chose to engage in such expressive conduct.  The only relevant instruction Safier provided was that O'Maley teachers essentially were not permitted to engage in speech protected by the First Amendment.

49.     Having been *de facto* forbidden from making internal inquiries, on February 26, 2018, Ms. Linquata posted a message on her personal Facebook profile, stating the following (the "Classroom Safety Post"):

> I am looking for a Secure Quick Double Door Lock suggestion for my classroom.  This lock would be used during a Lockdown Emergency Situation.
>
> 📌Door Facts 🟫
>
> 🔶 Outward swinging wooden doors
>
> 🔶 No Handles on the inside
>
> 🔶 Hinges on the outside
>
> 🔶 There is a top lock on one door that is always on
>
> 🔶 There is a deadbolt in the middle that locks one door to the other but if pulled with enough force it can be easily opened
>
> 🔶 The floor is carpeted and I don't know if I could screw anything into the floor.
>
> Lastly, it needs to be cost efficient because this will be something I personally buy.  It could even be something someone could make, it doesn't have to be bought, it just needs to work.  I just want a 2nd line of security/ defense to help better protect my students.

50.     This post received multiple comments regarding suggestions on how Ms. Linquata might obtain a sufficiently secure classroom door.

51.     On February 28, 2018, Defendant Lucey summoned Ms. Linquata for a meeting.  She falsely told Ms. Linquata that the Classroom Safety Post constituted a severe breach of the Policy and placed students and staff at major risk.  She did not explain the basis for this assertion.

52.     During this meeting, Defendant Lucey claimed that Ms. Linquata exhibited a pattern of trying to "go over [Lucey's] head," and as an example of this prior behavior noted Ms. Linquata's January 2017 Facebook correspondence with Mayor Theken, which resulted in Defendants finally removing the likely asbestos.

RANDAZZA | LEGAL GROUP

53.     Lucey never explained why she was content to risk exposing students and teachers to asbestos.

54.     Lucey never explained why she failed to take action to address security in the wake of the Parkland shooting.

55.     Instead, Lucey's only concern was how Ms. Linquata's communications reflected on her.

56.     During this meeting, Defendant Lucey informed Ms. Linquata that, because there was an existing pattern of allegedly questioning Lucey's authority, O'Maley may decide not to renew Ms. Linquata's contract for next year.

57.     Ms. Linquata did not question Lucey's authority; all of her communications were the result of Lucey's failure to exercise that authority, made in good faith, on issues of student and staff safety and health, through permissible channels of communication.

### 5.3     Ms. Linquata's Termination from O'Maley

58.     On May 11, 2018, Defendant Lucey informed Ms. Linquata that SCG would not be renewing her teaching contract for the next school year.  During this meeting, she falsely claimed this was due to SCG budget cuts.

59.     In fact, O'Maley's budget for Fiscal Year 2019 increased by 5.07%, with an increase in all educator salaries.  Defendant Lucey informed Ms. Linquata that the school would be replacing her position with another teacher, most likely a computer coding teacher, further belying the purported justification for her termination.

60.     During this meeting, Lucey also informed Ms. Linquata that she would be giving Ms. Linquata a letter of recommendation because her termination "has nothing to do with you as a teacher, you're a wonderful teacher."  Lucey expressed similar sentiments multiple times prior, including statements made in front of union representatives.

61.    Ms. Linquata was not given advance notice of this meeting, and did not have an opportunity to secure union representation for the meeting.

62.    On or about May 16, 2018, Ms. Linquata informed her students that, due to the claim of budget cuts, O'Maley was terminating her position and that she would not be returning to O'Maley next year.

63.    Ms. Linquata's students, and their parents, did not take this news well, and protested her termination.   These protests included petitions to school administrators to keep Ms. Linquata employed, as well as starting social media campaigns on the social networking web sites Instagram and Twitter with the hashtag #SaveMrsLinquata.

64.    On or about May 17, 2018, Defendants Lucey and Strong had an in-person meeting with Ms. Linquata.   During this meeting, Defendant Lucey informed Ms. Linquata that she was not being terminated due to budget cuts, but due to "strong disciplinary actions and insubordination," and that Lucey would send Ms. Linquata a letter of non-renewal stating that Ms. Linquata's contract was not being renewed due to her disciplinary history.

65.    During this meeting, Lucey informed Ms. Linquata that she did not have the right to inform her students why she had been terminated.

66.    During this meeting, Defendant Strong mentioned that Ms. Linquata's niece, who was a student at O'Maley, was "the one stirring the pot" regarding student protests of Ms. Linquata's termination.

67.    Strong stated that "it would be a shame" if the school had to take disciplinary actions against Ms. Linquata's niece, and that she needed to "stop talking."

68.    Lucey's statements were a threat that if Ms. Linquata did not stop O'Maley students from exercising their First Amendment rights, her niece would be punished.

69.     Like the prior meeting, Ms. Linquata was not given advance notice and was not given an opportunity to secure union representation for it.

70.     That same day, during the student lunch period, O'Maley staff took away multiple student petitions to renew Ms. Linquata's employment contract and informed students that they were no longer allowed to petition.

71.     On May 24, 2018, Ms. Linquata received a letter, signed by Defendant Lucey, providing notice that Ms. Linquata's contract would not be renewed when it expired on June 30, 2018.

72.     The letter did not state a basis for non-renewal.

73.     On June 18, 2018, Defendant Strong submitted a Summative Evaluation Report (the "Report") for Ms. Linquata.  The Report purported to be an overall evaluation of Ms. Linquata's teaching performance for the 2017-2018 school year.

74.     The Report noted numerous alleged deficiencies in Ms. Linquata's teaching performance, including "a number of professional concerns relating to on-line posts regarding school matters."

75.     The Report made no mention of Ms. Linquata's very popular video journalism after-school program she operated the entire time she worked at O'Maley, as well as her creation of OMTV, a student-run news program.

76.     On information and belief, the Report was fabricated, and Defendant Strong submitted it with little or no personal awareness of the factual bases for any of its conclusions.  Strong did not attend any of Ms. Linquata's classes to conduct mandatory observations, as required by O'Maley policy, and did not review any alleged evidence of Ms. Linquata's alleged shortcomings until the day he submitted the Report.

77.     On information and belief, Defendant Lucey instructed Strong to fabricate the Report to manufacture content-neutral grounds for not renewing Ms. Linquata's contract that were not so obviously unconstitutional.

78.     As Superintendent, Defendant Safier ratified the actions of Lucey and Strong.

79.     On information and belief, prior to Ms. Linquata's termination Defendant Safier had received multiple emails and phone calls testifying to Ms. Linquata's exceptional teaching qualities.  Dr. Safier knew of these statements but willingly disregarded them in ratifying Lucey and Strong's actions.

80.     Ms. Linquata's contract of employment with SCG ended on June 30, 2018 and has not been renewed.

81.     Such non-renewal is tantamount to a termination of employment.

82.     Had Ms. Linquata's contract of employment been renewed, she would have become entitled to professional teacher status.

### 6.0     FIRST CLAIM FOR RELIEF

**Violation of the First Amendment to the United States Constitution
Under 42 U.S.C. § 1983 (Free Speech)
(Against All Defendants)**

83.     Ms. Linquata repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

84.     Ms. Linquata has First Amendment rights as an employee of Defendant SCG, and Defendants cannot freely take action against Ms. Linquata for her exercise of these rights.

85.     Defendants terminated Ms. Linquata's employment in response to Ms. Linquata making electronic communications on her personal email and social media accounts, during her time off and as a private citizen, of which Defendants did not approve.

86.     The Policy imposes a significant burden on expressive activity.

87.     Ms. Linquata's statements related to matters of public concern.

88.     Ms. Linquata's statements were a substantial motivating factor in Defendants' decision to terminate her employment.

89.     Any purported interest of Defendants in promoting the efficiency of its public services did not outweigh Ms. Linquata's free speech rights as related to the statements at issue.

90.     Defendants' decision to terminate Ms. Linquata's employment was arbitrary and capricious.

91.     Defendants' conduct violated Ms. Linquata's rights under the First Amendment by punishing her for exercising her First Amendment rights. Defendants additionally chilled future speech by sending a message to Ms. Linquata and other SCG employees that they could be similarly punished for making statements of which Defendants did not approve.

92.     Defendant Lucey imposed discipline on Ms. Linquata not because of any likely or actual disruption caused by Ms. Linquata's speech, but because Ms. Linquata had the gall to attempt to ensure the safety of her students from potential asbestos-containing materials and school shooters in the face of utter indifference from O'Maley administrators.

93.     At all times, Defendant Lucey was fully aware that her actions were unconstitutional, as evidenced by the fact that she initially stated a completely fabricated content-neutral ground for Ms. Linquata's termination, and then instructed Defendant Strong to fabricate Ms. Linquata's 2017-2018 Report to contain a content-neutral basis for her termination.

94.     Defendant Strong was fully aware that his actions were unconstitutional, as evidenced by his creation of the completely fraudulent

Report that served no purpose other than to state a false content-neutral ground for terminating Ms. Linquata.

95.     Defendants Lucey and Strong were fully aware that there was no possible constitutional basis for extorting Ms. Linquata into discouraging students from exercising their First Amendment rights by threatening the academic future of an innocent student.

96.     Defendants' Policy utilized by Defendants to discipline Ms. Linquata is unconstitutional in and of itself insofar as it is overbroad, and expressly authorizes discipline under terms inconsistent with well-established First Amendment jurisprudence.

97.     Defendants' actions constitute an unconstitutional custom, practice, and/or policy of punishing speech made by employees in their personal capacity on matters of public concern.

98.     The fact that multiple high-level supervisors, including O'Maley's principal, were ignorant of the fact that SCG employees have a constitutional right to speak as private citizens on matters of public concern demonstrates that SCG was deliberately indifferent in its training regarding employees' First Amendment rights, and failed to adopt policies necessary to prevent constitutional violations.

99.     Such deprivation of Plaintiff's constitutional rights constitutes a violation of 42 U.S.C. § 1983.

100.     As a direct and proximate result of Defendants' violation of Ms. Linquata's First Amendment rights, Ms. Linquata has suffered and/or incurred loss of income, earnings opportunity, humiliation, and emotional pain and suffering.

101.     Defendants' actions in violating Ms. Linquata's First Amendment rights were done intentionally, maliciously, and/or with reckless indifference to

Ms. Linquata's constitutional rights and entitles Ms. Linquata to an award of punitive damages.

102. As a direct and proximate result of Defendants' violations of the First Amendment and 42 U.S.C. § 1983, Plaintiff's contract has not been renewed and such non-renewal is ongoing.

### 7.0    SECOND CLAIM FOR RELIEF

**Violation of the Fourteenth Amendment to the United States Constitution
Under 42 U.S.C. § 1983 (Due Process)
(Against All Defendants)**

103. Ms. Linquata repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

104. Defendants terminated Ms. Linquata's employment because her statements allegedly violated SCG's Policy.

105. SCG's Policy is so vague that it is impossible for persons of ordinary intelligence to determine prospectively what speech is prohibited by the Policy, and is thus unconstitutional.

106. The Policy is also unconstitutionally vague because it allows for arbitrary and discriminatory enforcement of its provisions.

107. Such deprivation of Plaintiff's constitutional rights constitutes a violation of 42 U.S.C. § 1983.

108. As a direct and proximate result of Defendants' violation of Ms. Linquata's Fourteenth Amendment rights, Ms. Linquata has suffered and/or incurred loss of income, earnings opportunity, humiliation, and emotional pain and suffering.

109. Defendants' actions in violating Ms. Linquata's Fourteenth Amendment rights were done intentionally, maliciously, and/or with reckless

indifference to Ms. Linquata's constitutional rights and entitles Ms. Linquata to an award of punitive damages.

110.    As a direct and proximate result of Defendants' violations of the Fourteenth Amendment and 42 U.S.C. § 1983, Plaintiff's contract has not been renewed and such non-renewal is ongoing.

**8.0     THIRD CLAIM FOR RELIEF**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(Against Defendants Lucey and Strong)**

111.    Ms. Linquata repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

112.    Ms. Linquata had an employment contract with SCG subject to automatic renewal unless notice of non-renewal was given.

113.    Defendants Lucey and Strong terminated Ms. Linquata's employment in response to Ms. Linquata making electronic communications on her personal email and social media accounts, during her time off and as a private citizen, of which Defendants did not approve.

114.    Such termination constituted a breaking of Plaintiff's relationship with SCG.

115.    Such termination was intentional by Defendants Lucey and Strong.

116.    Ms. Linquata's statements were a substantial motivating factor in Defendants Lucey and Strong's decision to terminate her employment.

117.    The decision to terminate Ms. Linquata's employment was arbitrary and capricious.

118.    Defendants' conduct violated Ms. Linquata's rights under the First Amendment by punishing her for exercising her First Amendment rights. Defendants additionally chilled future speech by sending a message to

Ms. Linquata and other SCG employees that they could be similarly punished for making statements of which Defendants did not approve.

119.   Defendant Lucey imposed discipline on Ms. Linquata not because of any likely or actual disruption caused by Ms. Linquata's speech, but because Ms. Linquata had the gall to attempt to ensure the safety of her students from potential asbestos-containing materials and school shooters in the face of utter indifference from O'Maley administrators.

120.   At all times, Defendant Lucey was fully aware that her actions were unconstitutional, as evidenced by the fact that she initially stated a completely fabricated content-neutral ground for Ms. Linquata's termination, and then instructed Defendant Strong to fabricate Ms. Linquata's 2017-2018 Report to contain a content-neutral basis for her termination.

121.   Defendant Strong was fully aware that his actions were unconstitutional, as evidenced by his creation of the completely fraudulent Report that served no purpose other than to state a false content-neutral ground for terminating Ms. Linquata.

122.   Defendants Lucey and Strong were fully aware that there was no possible constitutional basis for extorting Ms. Linquata into discouraging students from exercising their First Amendment rights by threatening the academic future of an innocent student.

123.   Such actions by Lucey and Strong were improper in motive and in means.

124.   As a direct and proximate result of Defendants Lucey and Strong's tortious interference with contractual relations, Ms. Linquata has suffered and/or incurred loss of income, earnings opportunity, humiliation, and emotional pain and suffering.

125.    Defendants' actions in interfering with Ms. Linquata's contract were done intentionally, maliciously, and/or with reckless indifference to Ms. Linquata's constitutional rights and entitles Ms. Linquata to an award of punitive damages.

### 9.0    FOURTH CLAIM FOR RELIEF
### CIVIL CONSPIRACY
### (Against Defendants Safier, Lucey and Strong)

126.    Ms. Linquata repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

127.    At all relevant times herein, Defendants Safier, Lucey, and Strong had coercive power over Ms. Linquata.

128.    At all relevant times herein, Defendants Safier, Lucey, and Strong acted pursuant to a common design to violate Ms. Linquata's constitutional rights and intentionally interfere with her contractual relationship with SCG.

129.    Ms. Linquata had an employment contract with SCG subject to automatic renewal unless notice of non-renewal was given.

130.    Defendants Lucey and Strong terminated Ms. Linquata's employment in response to Ms. Linquata making electronic communications on her personal email and social media accounts, during her time off and as a private citizen, of which Defendants did not approve.

131.    Such termination was intentional by Defendants Lucey and Strong.

132.    Ms. Linquata's statements were a substantial motivating factor in Defendants Lucey and Strong's decision to terminate her employment.

133.    The decision to terminate Ms. Linquata's employment was arbitrary and capricious.

134.    Defendants' conduct violated Ms. Linquata's rights under the First Amendment by punishing her for exercising her First Amendment rights. Defendants additionally chilled future speech by sending a message to

Ms. Linquata and other SCG employees that they could be similarly punished for making statements of which Defendants did not approve.

135.   Defendant Lucey imposed discipline on Ms. Linquata not because of any likely or actual disruption caused by Ms. Linquata's speech, but because Ms. Linquata had the gall to attempt to ensure the safety of her students from potential asbestos-containing materials and school shooters in the face of utter indifference from O'Maley administrators.

136.   At all times, Defendant Lucey was fully aware that her actions were unconstitutional, as evidenced by the fact that she initially stated a completely fabricated content-neutral ground for Ms. Linquata's termination, and then instructed Defendant Strong to fabricate Ms. Linquata's 2017-2018 Report to contain a content-neutral basis for her termination.

137.   Defendant Strong was fully aware that his actions were unconstitutional, as evidenced by his creation of the completely fraudulent Report that served no purpose other than to state a false content-neutral ground for terminating Ms. Linquata.

138.   Defendants Lucey and Strong were fully aware that there was no possible constitutional basis for extorting Ms. Linquata into discouraging students from exercising their First Amendment rights by threatening the academic future of an innocent student.

139.   Such termination constituted a tortious act in furtherance of the conspiracy between Defendants Safier, Lucey, and Strong.

140.   As a direct and proximate result of Defendants Safier, Lucey, and Strong's conspiracy, Ms. Linquata has suffered and/or incurred loss of income, earnings opportunity, humiliation, and emotional pain and suffering.

141.   Defendants' actions in interfering with Ms. Linquata's contract were done intentionally, maliciously, and/or with reckless indifference to Ms. Linquata's constitutional rights and entitles Ms. Linquata to an award of punitive damages.

## 10.0   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all triable issues in the instant matter including, but not limited to, all counts of her Complaint, and any and all Defenses, including Affirmative Defenses, Counterclaims, Cross-Claims, and/or Third-Party Claims as may arise.

## 11.0   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   For an injunction to reinstate Plaintiff to her former position with back pay/front pay and benefits, with employment deemed to have been renewed for the 2018-2019 school year under G.L. c. 71, s. 41.

2.   For special damages in an amount in excess of $25,000.

3.   For compensatory damages in excess of $25,000.

4.   For punitive damages against Defendants Safier, Lucey and Strong.

5.   For a declaration that SCG's Policy is unconstitutional under the First Amendment to the United States Constitution.

6.   For a preliminary and/or permanent injunction enjoining SCG from taking employment-related actions based upon an alleged violation of the Policy.

7.   For attorneys' fees and litigation costs incurred.

8.   For such and other equitable relief, as the Court deems just and proper.

Dated: August 28, 2018.

Respectfully submitted,

/s/ Marc J. Randazza

Marc J. Randazza (BBO# 651477)
RANDAZZA LEGAL GROUP, PLLC
P.O. Box 5516
Gloucester, Massachusetts 01930
Tel: (702) 420-2001
Email: ecf@randazza.com

Jay M. Wolman (BBO# 666053)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
Email: ecf@randazza.com

Attorneys for Plaintiff
Jessica Linquata